IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| Doug Boedicker, | ) | Case No.: 2:20-cv-2665 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Rushmore Loan Management | ) | **COMPLAINT** |
| Services LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

1.  The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.    Doug Boedicker ("Plaintiff"), through his attorneys, brings this action to challenge the actions of Rushmore Loan Management Services LLC, ("Defendant"), with regard to attempts by Defendant to unlawfully and abusively collect a debt Defendant alleged Plaintiff owed, and this conduct caused Plaintiff damages.

3.    Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges on personal knowledge.

4.    While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5.    Unless otherwise stated, all the conduct engaged in by Defendant took place in Minnesota.

6.    Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

7.    All alleged FDCPA violations herein are material violations of the FDCPA as these violations would limit the ability of a hypothetical least sophisticated consumer and/or unsophisticated consumer to make an intelligent choice as to the alleged debt and actions that should be taken as to the alleged debt.

8.    Through this Complaint, Plaintiff does not allege that any state court judgment

was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

9.  Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692(k).

10. This Court has federal question jurisdiction because this case arises out of Defendant's violation of federal law—the FDCPA.

11. Venue is proper pursuant to 28 U.S.C. § 1391 as all the events and omissions giving rise to Plaintiff's claims occurred in Kansas.

12. Defendant is subject to the Court's personal jurisdiction, as Defendant conducts business within Kansas, and Defendant's conduct giving rise to this action accrued in Kansas.

13. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

14. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendant is liable to Plaintiff or the relief prayed for herein.

## PARTIES

15.   Plaintiff is a person who resides in the City of La Cygne, State of Kansas.

16.   Plaintiff is a natural person allegedly obligated to pay a debt, and is a consumer, as that term is defined by 15 U.S.C. § 1692a(3).

17.   Plaintiff is "any person" as the term is used in 15 U.S.C. § 1692d.

18.   Defendant is an entity doing business in the State of Kansas.

19.   Defendant's registered agent's address is: Corporation Service Company, 2900 SW Wanamaker Dr., Ste. 204, Topeka, KS 66614.

20.   Defendant is a person who used an instrumentality of interstate commerce or the mails in a business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is therefore a debt collector as that phrase is defined by 15 U.S.C. § 1692a(6).

21.   Any alleged debt at issue in the present matter was acquired by Defendant after the alleged debt went into default, further supporting Defendant's status as a Debt Collector pursuant to the FDCPA.

## FACTUAL ALLEGATIONS

24.   This case involves an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal,

family, or household purposes, whether or not such obligation has been reduced to judgment otherwise know as a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

25. Defendant attempted to collect a "debt" from Plaintiff and Defendant is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

26. Plaintiff incurred a debt to that was for primarily for personal, family or household purposes as defined by §1692(a)(5).

27. Specifically, Plaintiff obtained a loan on or about June 29, 2005 for a mortgage on a house (the "Debt").

28. Plaintiff lived in that house that was the subject of the Debt.

### *Plaintiff's Bankruptcy*

29. Several years later, on or about April 10, 2018, Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Kansas and was assigned case number 18-20717 (the "Bankruptcy").

30. Plaintiff's obligations on the Debt were scheduled in the Bankruptcy.

31. Sometime before August 13, 2018, the Debt was transferred or otherwise sold to Defendant.

32. On or about August 13, 2018, Plaintiff received a Discharge Order in his Bankruptcy.

33. As a result of the Discharge Order, Plaintiff's obligations to Defendant were

discharged and Plaintiff no longer owed Defendant any amount of money on the Debt.

34. The Discharge Order in Plaintiff's Bankruptcy specifically states "This order means that no one may make any attempt to collect a discharged debt from the debtor[] personally."

35. Defendant received notice of the Discharge Order according to the Certificate of Notice attached to the Discharge Order.

### *Defendant's Credit Reporting*

36. Despite Plaintiff's discharge as to the Debt, on or about January 7, 2020, Defendant reported inaccurate and derogatory information to Trans Union, which Trans Union subsequently reported on Plaintiff's Trans Union credit report.

37. Specifically, Defendant reported to Trans Union that Plaintiff had a past due amount of $10,580 on the Debt to Rushmore.

38. Defendant further reported to Trans Union that Plaintiff was 120 days past due on the Debt to Rushmore.

39. These reported statements were false because any obligation by Plaintiff to Rushmore on the Debt was discharged in his Bankruptcy.

40. Defendant's false reporting on Plaintiff's Trans Union report produced extremely negative marks that would impact Plaintiff's credit score.

41.   Sometime after Rushmore reported the false and derogatory information identified above, Plaintiff accessed his credit report and observed Rushmore's reporting.

42.   Plaintiff was confused and concerned as to the status of the Debt, given Defendant's reporting of a past due balance of $10,580 and status of 120 days past due.

43.   Plaintiff was fearful that Rushmore would continue to come after him personally on the Debt despite the Debt being discharged in Plaintiff's Bankruptcy.

### The Impact of False, Inaccurate or Misleading Information on Consumer Reports

44.   A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

  i.      credit or insurance to be used primarily for personal, family, or household purposes;

  ii.     employment purposes; or

  iii.    any other purpose authorized under section 1681b.

45.   As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

46.   A Federal Trade Commission study mandated by Congress on credit report

accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

47. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

48. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

49. Defendant's reporting of inaccurate and derogatory information caused Plaintiff to suffer from reduced FICO credit scores.

50. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

51. The term "credit score" is a numerical value or a categorization used to predict

the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

52. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

53. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.transunion.com/credit-score.

54. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even

zero-percent financing credit offers for in-store credit lines.

55.     Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

56.     Here, inaccurately reporting that the Debt, as of January 2020, had a past due balance of $10,580 and was 120 days past due as to Plaintiff—when it was in fact discharged in bankruptcy it 2018—adversely affects Plaintiff's FICO score, as it makes it appear that Plaintiff was recently over four months behind on a significant obligation and owed over ten thousand dollars.

57.     There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

58.     Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or false information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

***Defendant's Violations of the FDCPA***

59. Defendant reported the Debt to Trans Union in an attempt to collect the Debt from Plaintiff.

60. "[T]he FCRA does not provide that it is the exclusive remedy when a debt collector furnishes false information to a credit bureau.  Even if a consumer cannot sue a furnisher of information under the FCRA, nothing forbids a consumer from suing a debt collector under the FDCPA." *Daley v. A&S Collection Assocs., Inc.*, 717 F. Supp.2d 1150, 1155 (D. Or. 2010).

61. Misrepresentations made to a credit reporting agency "fall comfortably within the plain language of the FDCPA". *Fritz v. Resurgent Capital Servs., LP*, 955 F.Supp.2d 163, 172 (E.D.N.Y. 2013).

62. Specifically, the FDCPA prohibits "communicating . . . to *any person* credit information which is known or which should be known to be false[.]" 15 U.S.C. § 1692e(8) (emphasis added); *see also* 15 U.S.C. § 1692a(2) ("The term "communication" means the conveying of information regarding a debt directly or indirectly to *any person* through *any medium*.") (emphasis added).

63. The FDCPA can apply to a debt collector's reporting of false, deceptive, or misleading information about a consumer's debt to a credit reporting agency. *See, e.g.*, *Collins v. Diversified Consultants, Inc.*, 2017 U.S. Dist. Lexis 35487 *67-68 (D. Colo., Feb. 1, 2017) (allowing Plaintiff's claims under §§ 1692e(2)(A) and e(8) to proceed beyond summary judgment despite the

defendant's bone fide error defense); *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010) (holding that a debt collector violated section 1692e(8) by misreporting the delinquency date of the debt); *Escobar v. Midland Credit Mgmt.,* No. 3:18-cv-819 (MPS), 2019 U.S. Dist. LEXIS 133382, at *19 (D. Conn. Aug. 8, 2019) (holding the plaintiff "has plausibly alleged that the false representation by [the defendant] to credit bureaus regarding a continuing debt obligation constituted a material misrepresentation. Therefore, [the plaintiff] sufficiently alleges [the defendant] made a false, deceptive or misleading representation in violation of § 1692e.").

64. Here, by communicating that Plaintiff owed $10,580 to Rushmore on the Debt and that the Plaintiff was 120 days past due on the Debt on Plaintiff's Trans Union credit report, Defendant communicated false credit information to "any person" and Defendant knew or should have known that the credit information it communicated was false. Through this conduct, Defendant violated 15 U.S.C. § 1692e(8).

65. Also, by communicating that Plaintiff owed $10,580 to Rushmore on the Debt and that the Plaintiff was 120 days past due on the Debt on Plaintiff's Trans Union credit report, Defendant falsely represented the character, amount, and/or legal status of the Debt.  Through this conduct, Defendant violated 15

U.S.C. § 1692e(2)(A).

66. In addition to violations under section e, reporting false information on a debt to a credit reporting agency can amount to an unfair or unconscionable means to collect or attempt to collect a debt under section f of the FDCPA. *Escobar v. Midland Credit Mgmt*., No. 3:18-cv-819 (MPS), 2019 U.S. Dist. LEXIS 133382, at *21 (D. Conn. Aug. 8, 2019) ("Communicating 'false, deceptive, or misleading' information regarding [the plaintiff's] debt obligation to credit bureaus, harming [the plaintiff's] credit, may violate both §§ 1692e and 1692f as [the plaintiff] has alleged.").

67. By communicating that Plaintiff owed $10,580 to Rushmore on the Debt and that the Plaintiff was 120 days past due on the Debt on Plaintiff's Trans Union credit report, thus damaging his credit reputation with false information, Defendant used an unfair or unconscionable means to collect or attempt to collect any debt. Through this conduct, Defendant violated 15 U.S.C. § 1692f.

68. Finally, by reporting false information about a consumer to a credit bureau a debt collector may be doing so for the purpose of harassing, oppressing, or abusing that consumer in the connection with the collection of the debt.

69. A falsely tarnished credit report would cause a consumer to engage in communications with a debt collector that the consumer otherwise would not have to engage in—thus giving the debt collector another opportunity to

attempt to collect a debt not owed in exchange for removing the derogatory information.

70. By communicating that Plaintiff owed $10,580 to Rushmore on the Debt and that the Plaintiff was 120 days past due on the Debt on Plaintiff's Trans Union credit report when that information was false, Defendant engaged in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt. Through this conduct, Defendant violated 15 U.S.C. § 1692d.

71. Plaintiff has suffered fear and frustration as a result of Defendant's false reporting and violations of the FDCPA.

72. Plaintiff additionally suffered a significant risk of financial harm as a result of a credit reporting agency and prospective creditors relying upon false information in calculating Plaintiff's credit score and/or credit reputation.

73. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. See *Kalebaugh v. Berman & Rabin, P.A.*, No. 13-2288-DDC-TJJ, 2014 WL 4259150, at *5 (D. Kan. Aug. 28, 2014).

74. The FDCPA is a remedial statute that "should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

## FIRST CAUSE OF ACTION

## THE FDCPA 15 U.S.C. § 1692, *ET SEQ.*

75. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as through fully stated herein.

76. The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA.

77. Defendant's violations of the FDCPA as alleged above, include, but are not limited to: 15 U.S.C. §§ 1692d, 1692e(2)(A), 1692e(8), and 1692f.

78. As a result of each and every violation of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court grant the following:

1. A finding that Defendant violated the FDCPA and/or an admission from Defendant that it violated the FDCPA.

2. Actual damages under 15 U.S.C. § 1692k(a)(1).

3. Statutory damages under 15 U.S.C. § 1692k(a)(2)(A).

4. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

5. Such other and further relief as the Court deems just and proper.

# **JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.


Respectfully submitted,


Dated: December 28, 2020          /s/ Ryan M. Callahan
                                  Ryan M. Callahan #62666
                                  James R. Crump #65514
                                  **Callahan Law Firm, LLC**
                                  222 W. Gregory Blvd., Suite 210
                                  Kansas City, MO 64114-1138
                                  Ph: 816-822-4041
                                  ryan@callahanlawkc.com
                                  james@callahanlawkc.com
                                  *Attorneys for Plaintiff*